## CARTER v. KINSLAIR.

**Excessive Interest in Note for Purchase Money Not Usurious.**

> A rate of interest of 10 per cent., promised in a purchase-money note, is not for the loan or forbearance of money or other thing; but is as much a part of same as the principal itself.

APPEAL FROM GRANT CIRCUIT COURT.

December 9, 1865.

OPINION BY THE COURT:

In September, 1857, appellee Williams sold to appellant a tract of land in Grant county for $5,000. Of the purchase money, $2,000 were payable on the 25th of December, 1857. When possession was to be surrendered to Carter, $750 were to be paid the 25th of December, 1858, and $2,750 were to be paid on the

25th of December, 1862, with interest thereon at the rate of *10
per cent. per annum* from the 25th of December, 1858, and for
this last-named sum, appellant executed his note.

Williams, at the time of the sale, executed his title bond to ap-
pellant, covenanting to convey the land to him by general war-
ranty when the last installment of the purchase price was paid.

The land is described in the bond as being the tract upon which
*Williams then resided,* adjoining the lands of several individuals
specially named, amongst whom is Thomas Caldwell, and then
this further description is added, " Said tract being composed of
what " I purchased of Wm. Boner, the parcel of land I bought of
Squire Lucas, the triangular piece I purchased of Thomas Cald-
well, and four interests I purchased, and to be purchased of the
McGlasson heirs.

The note for the last installment of the purchase money Wil-
liams assigned to Kinslair, and appellant having failed to dis-
charge the same, this action was brought to coerce payment by an
enforcement of a vendor's lien; and payment is resisted upon two
grounds.

1. That the purchase included the whole tract of land bought
by Williams from William Boner, which contained about 160
acres, and of which appellant got only about ninety-six and one-
half acres, Williams having previously sold to one Thomas Cald-
well sixty-three and one-half acres of the Boner tract, all of which
at the time he purchased appellant alleges he was ignorant, and
that he was deceived and defrauded by Williams, and asks an
abatement of the price to the extent of the value of sixty-three and
one-half acres previously purchased by Caldwell out of the Boner
tract.

2. That the interest promised in the note for the deferred pay-
ment over *6 per cent. per annum* is usurious and unlawful, and
should be purged from the note.

The first and second installments of the purchase price were
paid, *and possession of the land on which Williams resided when*
the sale was made surrendered, at the times specified in the con-
tract, and no complaint appears to have been made by appellant
in reference to the failure on the part of Williams to put him in
possession of the whole of the land purchased of Boner, until the
note for the last installment matured.

And the peculiar phraseology of the title bond in describing or

identifying the particular tract or parcels of land sold gave rise, doubtless, to the main controversy in this case.

It is perfectly certain that appellant never had and cannot get, by virtue of his purchase from Williams, all the land Williams purchased of Boner, whether his contract with Williams included the whole of said tract or not, because, before that contract was made, Williams had sold and conveyed sixty-three and one-half acres of the Boner tract to Caldwell, and he was in the possession thereof at the time the contract between appellant and Williams was entered into.

But did appellant's purchase in fact include the sixty-three and one-half acres of the Boner tract previously purchased by, and then in possession of Caldwell?

In the description of the land purchased by Carter, his bond contains no statement of the number of acres he was to get by virtue of his purchase; but it is distinctly stated that he purchased *the tract* or *parcel of land on which Williams then resided;* he brought no other tract and no more land, if that statement of what he did buy is to prevail.

This tract was separated from the land Caldwell had previously purchased of Williams by a division fence then standing, and Caldwell was then in the actual occupancy of his part of the land up to that fence; and this part of the Boner tract did not constitute any part of the tract or parcel of land upon which Williams "*resided*" at the time of his sale to appellant; and to construe their contract so as to include the sixty-three and one-half acres of land in possession of Caldwell would be to disregard and nullify this important stipulation in it.

Moreover, when the possession was delivered to appellant in December, 1857, there is no evidence, then, that he claimed to have purchased, or to be entitled to, any more land than that which he was then put in possession of; he was, as the evidence shows, the clerk of the Grant County Court when he made said purchase, and was a good surveyor, and it cannot be supposed that he would have made the purchase of a valuable tract of land in the county, where he was the custodian of the evidence of his vendor's title, with the means in his own possession of ascertaining the character of the title and the quantity and boundary of the land he was purchasing, and fail and neglect to do so; the probability is that he did satisfy himself in regard to these matters, and in-

dependent of all this there is other evidence that he understood well that his purchase did not include the land previously sold to Caldwell.

Cason proves that appellant told him he had purchased 105 acres of land from Williams; and the county assessors from the year he purchased up to the time this note matured prove that he listed this tract of land at 105 acres. The evidence, therefore, establishes conclusively that appellant has all the land he purchased and that Williams' title is clear and such as he is bound to accept.

As to the second ground of complaint, we need only say that the rate of interest promised in the note was not for the loan or forbearance of money or other thing, but was as much a part of the price of the land as any other of the payments, or parts of payments, stipulated to be made, and is not usurious interest in the legal sense of that term. Tousey v. Robinson, 1 Metc. 663.

The judgment is, therefore, affirmed.